**UNITED STATES of America,**
**Plaintiff,**

v.

**INSTITUTE OF COMPUTER TECH-**
**NOLOGY, Defendant.**

**Civ. A. No. 5–71231.**

United States District Court,
E. D. Michigan, S. D.

Nov. 19, 1975.

Thomas M. Woods, Asst. U. S. Atty., Detroit, Mich., Donald A. Cockrill, U. S. Dept. of Justice, Civ. Div., Frauds Section, Washington, D. C., for plaintiff.

Gregory L. Curtner, Miller, Canfield, Paddock & Stone, Detroit, Mich., for defendant.

## MEMORANDUM OPINION

FEIKENS, District Judge.

The Institute of Computer Technology (ICT), defendant herein, agreed on October 15, 1974 to participate in a Basic Educational Opportunity Grants (BEOG) Program, administered by the United States Commissioner of Education pursuant to 20 U.S.C. § 1070a. The purpose of this program is "to assist in making available the benefits of post-secondary education to qualified students in institutions of higher education". 20 U.S.C. § 1070(a). Defendant agreed to act as an agent of the Office of Education in determining the eligibility of and disbursing BEOG funds to its students.

Alleging that defendant has failed properly to account for and disburse BEOG funds pursuant to the contract and the BEOG regulations (45 C.F.R. § 190.1 et seq.), plaintiff brought an action to enjoin defendant from disbursing any federal funds in its custody until it properly accounted for all funds advanced to it as of the date of the complaint. The parties thereupon stipulated that this court should enjoin defendant from disbursing the sum of one hundred thousand dollars ($100,000.00) on deposit with the Detroit Bank & Trust, until, *inter alia,* "[t]he Institute reconstructs its previous BEOG awards with proper documentation to the satisfaction of this Court, therein accounting for all funds advanced to Defendant to this date". The court entered an injunctive order in accordance with this stipulation. Believing that the conditions of the injunctive order have since been satisfied, defendant moved to dissolve the order; a motion to dismiss the complaint on the ground that the Office of Education has primary jurisdiction over this dispute was also filed. Plaintiff moved to amend its complaint to add as a defendant Harry M. Borcherding, president and owner of ICT, and to add counts for damages and statutory forfeitures under the False Claims Act, 31 U.S.C. § 231 et seq., and for money had and received.

Turning first to plaintiff's motion to amend, Federal Rule of Civil Procedure 15(a) provides that leave to amend pleadings "shall be freely given when justice so requires". The court finds neither undue delay, bad faith, nor dilatory motive on the part of plaintiffs, nor undue prejudice to defendant in allowing the amendment. *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9

L.Ed.2d 222 (1962). The motion to amend is therefore granted.

The jurisdiction of this court is invoked pursuant to 28 U.S.C. § 1345 [1] for the breach of contract and money had and received counts, and 31 U.S.C. § 232 [2] for the False Claims Act count. Defendant contends that these jurisdictional grants are limited by the doctrine of primary jurisdiction as set forth in *Far East Conference v. United States,* 342 U.S. 570, 72 S.Ct. 492, 96 L.Ed. 576 (1952) and *Whitney National Bank v. Bank of New Orleans,* 379 U.S. 411, 85 S.Ct. 551, 13 L.Ed.2d 386 (1965), as well as by the failure of the Office of Education to comply with the Administrative Procedures Act, in particular 5 U.S.C. § 558(c). [3]

*Far East Conference* was an action brought by the United States, alleging that a discriminatory dual-rate system established by an association of shippers constituted a restraint of trade in violation of the Sherman Act. The Supreme Court held that the complaint should be dismissed because the government had not first resorted to the Federal Maritime Board, stating:

"[I]n cases raising issues of fact not within the conventional experience of judges or cases requiring the exercise of administrative discretion, agencies created by Congress for regulating the subject matter should not be passed over. This is so even though the facts after they have been appraised by specialized competence serve as a premise for legal consequences to be judicially defined."

342 U.S. at 574, 72 S.Ct. at 494. This result was reached despite the fact that the Maritime Board had no authority to enforce the Sherman Act, 342 U.S. at 578, 72 S.Ct. 492 (Douglas, J., dissenting), apparently because the case involved "questions within the general scope of the Maritime Board's jurisdiction". 342 U.S. at 577, 72 S.Ct. at 495.

Similarly, defendant argues, the present case involves issues requiring the interpretation of complex government regulations, which should first be resolved by applying the expertise of the Office of Education. *Far East Conference* is distinguishable, however, on two important grounds. First, while the nominal party in both this case and in *Far East Conference* is the United States, it is important to note that the real party in interest here is the Office of Education itself, represented by Unit-

1. 28 U.S.C. § 1345 provides:
   "Except as otherwise provided by Act of Congress, the district courts shall have original jurisdiction of all civil actions, suits or proceedings commenced by the United States, or by any agency or officer thereof expressly authorized to sue by Act of Congress."

2. 31 U.S.C. § 232(A) provides:
   "The several district courts of the United States, the several district courts of the Territories of the United States, within whose jurisdictional limits the person doing or committing such act shall be found, shall wheresoever such act may have been done or committed, have full power and jurisdiction to hear, try, and determine such suit."

3. 5 U.S.C. § 558(c) provides:
   "When application is made for a license required by law, the agency, with due regard for the rights and privileges of all the interested parties or adversely affected persons and within a reasonable time, shall set and complete proceedings required to be conducted in accordance with sections 556 and 557 of this title or other proceedings required by law and shall make its decision. Except in cases of willfulness or those in which public health, interest, or safety requires otherwise, the withdrawal, suspension, revocation, or annulment of a license is lawful only if, before the institution of agency proceedings therefor, the licensee has been given—
   (1) notice by the agency in writing of the facts or conduct which may warrant the action; and
   (2) opportunity to demonstrate or achieve compliance with all lawful requirements.
   When the licensee has made timely and sufficient application for a renewal or a new license in accordance with agency rules, a license with reference to an activity of a continuing nature does not expire until the application has been finally determined by the agency."

ed States attorneys. If the dispute were remanded to the Office of Education as suggested by defendant, it can be assumed that the same interpretation of the regulations would be advanced as that advanced in this lawsuit. Defendant's argument, transposed to the situation in *Far East Conference,* is equivalent to asking that the antitrust case be remanded to the Justice Department because the latter has more expertise in the field of antitrust than do the courts. To state such a proposition is to demonstrate its lack of merit. Second, the Office of Education, unlike the Federal Maritime Board, lacks the statutory authority to provide an adequate remedy. The Maritime Board had authority to direct the payment of full reparation for any injury caused by discriminatory agreements of the kind involved in *Far East Conference. See* 46 U.S.C. §§ 812, 821; 342 U.S. at 574, 72 S.Ct. 492. The Office of Education, on the other hand, cannot provide a remedy for the breach of a contract, especially one to which it is itself a party, nor can it issue injunctions, adjudicate charges under the False Claims Act, or order restitution of money had and received. For these reasons, *Far East Conference* and its progeny, including *Whitney National Bank, supra,* are not controlling here, and the doctrine of primary jurisdiction does not apply. *Cf. Local Union No. 189 v. Jewel Tea Co.,* 381 U.S. 676, 684–88, 85 S.Ct. 1596, 14 L.Ed.2d 640 (1965).

■ Defendant further argues that this court lacks jurisdiction because the Office of Education failed to comply with 5 U.S.C. § 558(c), which requires that an agency provide notice and an opportunity to achieve compliance with all lawful requirements before a "license" may be revoked. "License" is defined in the Administrative Procedures Act (APA) to include "an agency permit . . . approval . . . or other form of permission". 5 U.S.C. § 551(8). Defendant argues that a letter from the Office of Education dated October 2, 1975, stating that ICT's eligibility sta-

tus to participate in the BEOG program "was secured through misrepresentation" and ordering ICT to cease participation immediately, constituted the revocation of a license without an opportunity to achieve compliance. Whatever legal merit this argument might have, it does not deprive the court of jurisdiction over the present lawsuit. If defendant is correct in its reading of the APA, at most it would mean that ICT cannot be barred from *future* participation in the BEOG program until the agency complies with § 558(c). This has no relevance to the present action, which is for breach of contract and fraud with regard to ICT's *past* participation in the program. None of the counts in the government's complaint seeks to revoke any license held by ICT.

The court finds that jurisdiction over the present action is conferred by 28 U.S.C. § 1345 and 31 U.S.C. § 232. Accordingly, defendant's motion to dismiss is denied.

■ Turning to defendant's motion to dissolve the injunctive order, defendant argues that the conditions on the order to which it stipulated have been satisfied. At an evidentiary hearing held on October 30, 1975, defendant presented expert testimony from an auditor of Arthur Young & Co. to the effect that there now exists a complete "audit trail" in the ICT records, and that this is all that the conditions in the injunctive order required. The government, on the other hand, argues that the requirement of "proper documentation to the satisfaction of this Court" mandates not only complete, auditable records, but also records that accurately reflect the eligibility and class attendance of ICT's students.

The court holds that the government's interpretation of the order is correct. The injunctive order is by its own terms to be dissolved only if defendant can demonstrate "to the satisfaction of this Court" that its documentation is "proper", i. e. that it accurately reflects that all funds advanced to defendant under

the BEOG program were properly disbursed in accordance with the regulations.

At an evidentiary hearing on November 7, 1975, the government introduced testimony of seven former students of ICT. In addition, their student files and the records of ICT with regard to the disbursement of BEOG funds were introduced into evidence. At a pre-evidentiary hearing conference in chambers, the court suggested that a sampling of the records might reveal facts typical of all the records on which a preliminary ruling could be based. This procedure was followed. In this case the court must make a preliminary finding whether ICT's records indicate that ICT has disbursed BEOG funds for these students in accordance with the regulations.

The government's primary position is that none of the seven students who testified were eligible for BEOG awards, because none attended classes for a minimum of twenty-four clock hours per week. To be eligible, the regulations require a student to be a "full-time undergraduate student". 45 C.F.R. § 190.-3(a)(2). The regulations define "full-time student" as "a student who is carrying a full-time academic work load . . . measured in terms of . . . (2) the course work or other required activities as determined by the institution in which the student is enrolled; provided, however, that such course work and activities amount to a minimum of . . . (iii) 24 clock hours per week for institutions which utilize clock hours to measure progress". 45 C.F.R. § 190.2(f).

The records of ICT show that each of the seven students was enrolled in a "Data Processing Specialist" program, which was scheduled to meet 25 hours per week. However, those students who testified to having actually attended class did not confirm that these records correspond with reality. Stephanie Burroughs stated that she started classes around June 16, 1975 and attended until

the first or second week in July. According to her testimony, the class met three hours per evening, five days per week. She never attended more than fifteen hours per week. Julia Perkins testified that she attended classes three evenings per week for four hours each evening, for a total of twelve hours per week. While the ICT class attendance records show that Miss Perkins attended 8½ hours of classes three days per week, she testified that this would have been impossible, since she was employed full time at the Michigan Bell Telephone Company during the same period. The court finds that Burroughs and Perkins were not "full-time students" within the meaning of the regulations, that the ICT records do not accurately reflect the number of hours per week for which they were enrolled, and that they were not eligible to participate in the BEOG program.

Four of the seven students, Vivian Vallier, Luther Bufford, Eula Henley and Laverne Lyons, testified that they never attended class at ICT. One who did attend, Cynthia Townsend, did not testify with regard to the number of hours per week her classes met. The court therefore has no basis for determining whether these five students were "full-time" or not. Defendant does not contend, however, that any of these five students actually completed the Data Processing Specialist program for which they were allegedly enrolled, and a dispute exists as to what portion, if any, of their BEOG awards should be refunded to the government. Assuming (without deciding) that these five students were at least initially eligible to participate in the BEOG program, the court must decide whether ICT's records properly reflect any refund that should be restored to the BEOG account.

■ The government argues that refunds are governed by 45 C.F.R. § 190.-78, which provides in relevant part:

"An institution shall reduce to writing its policy for making refunds of amounts paid for tuition, fees, room

and board to students who withdraw or fail to pursue their course of study at such institution. . . . If a refund is due to a student pursuant to this policy, a portion of such refund must be restored to the Basic Educational Opportunity Grant account. The amount so restored shall bear the same ratio to the amount of the refund as the amount of the Basic Educational Opportunity Grant already disbursed to the student at the time he withdraws bears to the amount determined by the institution to be the average amount required for a student to pursue studies at that institution for the period of enrollment for which such refund is requested."

The apparent purpose of this regulation is to ensure that if an institution owes a refund to a student who withdraws, the portion of that refund representing BEOG funds will be credited back to the government. It is clearly not designed for cases such as this, however, in which the only payment made to the institution consisted of BEOG funds. Here the *entire* amount of any refund, not a "portion" thereof, must be credited back to the BEOG account. The most reasonable means of calculating the amount to be restored to the BEOG account in this case is simply to subtract the amount that ICT is permitted to retain under its refund policy from the total BEOG funds disbursed. The difference must be credited to the government.

ICT's refund policy is set forth on the application forms in each student file admitted into evidence. In case of withdrawal, the policy is as follows:

"After scheduled starting date, withdrawal will be determined by the last date of attendance. Any excess monies paid over the total charges for tuition and for registration fee will be refunded per schedule.

"Less than 1 week
10% of Total plus $100
(Maximum $300)

"Over 1 week—25% of Course
25% of Total plus $100"

According to the proffered evidence in this case, a "week" consists of 25 hours of class. Since the refund policy is expressly gauged in terms of "attendance", the court must determine in each case the number of hours the student actually attended prior to withdrawal. The percentage to be retained by ICT is a percentage of the total tuition charge for the course. While the normal tuition charge for ICT's Data Processing Specialist course is said to be $2,700, defendant forthrightly admits in its reply brief that "the BEOG students were never charged $2,700.00, that ICT never received $2,700.00 from any source for these students, and that ICT agreed with the Wayne County Department of Social Services to award such students a scholarship *to reduce their tuition to $1,050.00*". Reply Brief of Defendant 2 (November 14, 1975) (emphasis added). As defendant points out, the refund policy should not be calculated with "bogus numbers having no relationship to reality". For BEOG students, ICT's tuition was $1,050.

Vivian Vallier, Luther Bufford, Eula Henley and Laverne Lyons all testified that they attended ICT for less than one week. ICT is therefore entitled to retain 10% of $1,050 plus $100, or a total of $205 for each student.

As to Vivian Vallier, only $131 in BEOG funds was disbursed. As this was less than the amount ICT was entitled to retain, no refund is due.

As to Luther Bufford, $919 in BEOG funds was disbursed. The refund owed by ICT to the government is therefore $714. Since ICT's records show only a refund of $144, there is a discrepancy of $570.

As to Eula Henley, $1,050 in BEOG funds was disbursed. The refund due is therefore $845. Since ICT's records show only a refund of $750, there is a discrepancy of $95.

As to Laverne Lyons, $525 in BEOG funds was disbursed. The refund due is $320. Since ICT's records show no refund due, there is a discrepancy of $320.

**928**

■ The above findings are made on assumptions—disputed by the government—that the students were enrolled in a qualifying program and that their BEOG awards were properly calculated and disbursed. The court reserves judgment on these issues until a full record can be made at a trial on the merits. But on the basis of these assumptions, there are substantial discrepancies between ICT's records and the refunds actually due the government. The court therefore finds that defendant has failed to demonstrate "proper documentation" that accounts "for all funds advanced to Defendant to this date".

Accordingly, defendant's motion to dissolve the injunctive order is denied. An appropriate order may be submitted.